

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| DAVID G. DEPRIEST, | ) | ED102307 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| v. | ) | 14SF-CC00103 |
| | ) | Honorable Kenneth W. Pratte |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | Filed: October 27, 2015 |

## Introduction

David DePriest (Movant) appeals the denial of his motion to vacate his guilty plea under Rule 24.035[1] (Rule 24.035 Motion) without an evidentiary hearing. This appeal concerns the fundamental constitutional issue of a defendant's voluntariness in entering a plea of guilty, and the inherent constitutional risks involved when a court chooses to accept multiple defendants' pleas of guilty at the same time.

Specifically, the Missouri Supreme Court and this Court have admonished the trial court here on multiple occasions that group pleas are disfavored and should be conducted "sparingly," if at all.[2] Roberts v. State, 276 S.W.3d 833, 856 n.5 (Mo. banc

---

[1] All Rule references are to Mo. R. Crim. P. (2014) unless otherwise indicated.

[2] To date, at least five appeals of group pleas conducted by this trial court have resulted in published opinions from this Court or the Missouri Supreme Court, all discouraging the practice. Roberts v. State, 276 S.W.3d 833, 856 n.5 (Mo. banc 2009); Wright v. State, 411 S.W.3d 381, 387 (Mo. App. E.D. 2013); Castor v. State, 245 S.W.3d 909, 915 n.8 (Mo. App. E.D. 2008); Elverum v. State, 232 S.W.3d 710, 712 n.4

2009). While the Missouri Supreme Court declined to adopt a rule that group pleas are *per se* unconstitutional, it did note that the practice increases the risk that pleas are either unknowing or involuntary. See id.

Despite this, the trial court here not only again engaged in this questionable practice, but also compounded the general risks by receiving simultaneous guilty pleas from co-defendants who were (1) siblings, (2) charged with the same offenses stemming from the same drug evidence, the majority of which was found in Movant's bedroom, (3) represented by the same attorney, and (4) pleading guilty pursuant to a plea agreement with the State that made any benefit to Movant's sister contingent on Movant's blind plea. Without inquiring further about any potential conflicts, the trial court proceeded to have Movant and his sister plead guilty standing side-by-side, with only their conflicted lawyer appearing on their behalf, alongside five additional defendants and their lawyers, in order to "save a great deal of time." If there was ever a time to condemn this group-plea procedure, it is now, in this case.

Because of the group plea under the circumstances here, there is no way to read this record and conclude that Movant voluntarily pled guilty. We reverse and remand with directions to vacate Movant's plea.

### Background

The following facts are contained in the record of Movant's guilty plea. The State charged Movant and his sister Natalie DePriest (Natalie) with the felony drug offenses of

(Mo. App. E.D. 2007); Guynes v. State, 191 S.W.3d 80, 83 n.2 (Mo. App. E.D. 2006). Four of these were published before the group plea in the current case, and this is not to mention the number of appeals which may also have addressed this issue in unpublished memorandums directed to the trial court. The sheer number of appeals challenging the voluntariness of group pleas conducted by this trial court indicates a general disregard for the inherent constitutional risks to defendants in this practice. Further, research has revealed no other appeals of group pleas from any other Missouri trial court, and at oral argument, neither party was aware of any other Missouri trial court conducting group pleas as the norm.

2

producing a controlled substance by knowingly cultivating more than five grams of marijuana (Count I), and possession of a controlled substance with intent to distribute (Count II). These charges came after police executed a search warrant at a residence occupied by Movant and Natalie. Police found 12 mature marijuana plants, eight small sprout marijuana plants, and marijuana in the closet in Movant's bedroom.[3] Police also seized a rifle that was one-quarter of an inch shorter than allowed by Missouri law, resulting in a charge of unlawful possession of a weapon (Count III) against Movant.

Movant's counsel (Counsel) represented Movant on all three charges, and he also represented Natalie on Counts I and II against her. Early on in Movant's case, the State offered a plea agreement whereby Movant would receive a 10-year sentence pursuant to Section 559.115, which would have first required him to successfully serve 120 days in a shock incarceration program. If he had not been successful, he would have served the remainder of his 10-year sentence. If Movant had successfully completed the 120 days' shock incarceration program, he would have been placed on a term of probation. At that point, he would have been required to serve the remainder of his 10-year sentence only if he violated the terms of his probation.

Counsel subsequently filed a motion to suppress evidence and conducted a joint preliminary hearing[4] with Movant and Natalie, at which an associate circuit judge also

---

[3] A general statement about police finding the evidence in "a closet" in Movant's residence appears in the transcript of Movant's sentencing hearing, and the fact that this closet was in Movant's bedroom comes from a letter Counsel wrote to the prosecutor. We note that Natalie has also appealed the denial of her Rule 24.035 motion to vacate her guilty plea, which is pending in this Court as well, ED103349. Because Movant's and Natalie's cases are closely interwoven, we take judicial notice of her case file. See Knorp v. Thompson, 175 S.W.2d 889, 894 (Mo. 1943); Vogt v. Emmons, 158 S.W.3d 243, 247 (Mo. App. E.D. 2005). In her motion, she stated that the police found two pounds of marijuana in a common area of the home, but the rest of the evidence was in Movant's bedroom.

[4] The transcript of the preliminary hearing is not included in the legal file on appeal.

3

heard argument on the motion to suppress.[5] After this hearing, the State revoked its first offer and made another offer of 15 years, with the same opportunity for probation after 120 days' shock incarceration.[6] Counsel later wrote to the prosecutor requesting another plea agreement that would include a recommendation for a suspended imposition of Movant's sentence with probation, but the State informed Counsel that no further offers would be forthcoming. The prosecutor stated that both of the prior offers Movant rejected were "better than the standard offer down here for that kind of case."[7]

Both Movant and Natalie ultimately entered blind pleas of guilty[8] to the charges against them, but only Natalie received anything in exchange from the State for doing so. The State agreed that if Movant pled guilty with Natalie, the State would dismiss some additional charges of passing bad checks, not pursue any bad-check charges in the future, and reinstate her bond so she could be released from jail pending sentencing.[9] The State's agreement with Natalie was contingent on Movant pleading guilty to avoid the possibility of Natalie later testifying that Movant had no involvement with the drugs, and the prosecutor further wanted them both to plead guilty on the same day.

---

[5] Natalie's motion in ED103349 further alleges that Counsel sent a letter to her and Movant affirmatively advising them *not* to accept the initial plea offer from the State, which included 120 days' shock incarceration, a 10-year suspended execution of sentence, and probation for her as well.

[6] After the associate circuit judge denied the first motion to suppress, Counsel filed an additional motion to suppress, which the trial court had heard but had not ruled upon at the time of Movant's plea. It is not clear from the record whether the State's second plea offer came before or after Counsel filed the second motion to suppress.

[7] At oral argument in this Court, the attorneys for both Movant and the State indicated that this was the standard State recommendation in these types of cases in St. Francois County. It is clear that it was either a good deal or the standard deal.

[8] A typical blind plea of guilty is one in which the defendant has no benefit of an agreed-upon sentence recommendation from the State, but instead the defendant pleads guilty without a recommendation, knowing the trial court could give any sentence within the range available, from probation in most cases to the maximum punishment.

[9] Both Movant and Natalie had initially posted bond and were not incarcerated during the pendency of these charges. However, at some point, the State filed additional charges against Natalie for passing bad checks and had her bond revoked, so Natalie was in jail at the time of the plea agreement.

4

On the day Movant and Natalie pled guilty, the trial court simultaneously received five other guilty pleas. The trial court stated that the reason for this procedure was "quite frankly, . . . to save a great deal of time." The trial court conducted this group plea by "addressing [its] questions and comments to [the seven defendants] as a group." The trial court told them for their responses, the court would begin with one defendant "and then move straight on down the line in order."

During this plea proceeding, Counsel and the prosecutor informed the trial court that the dismissal of Natalie's additional charges and the reinstatement of her bond were contingent on Movant's plea of guilty. The trial court was also aware that Counsel represented both Movant and Natalie, but made no further inquiry into the possibility of an actual conflict of interest upon hearing the terms of the plea agreement. The trial court accepted Movant's and Natalie's pleas and set a later date for sentencing.

At sentencing, Counsel asked that the trial court consider suspending imposition of Movant's sentence and granting Movant probation. Counsel noted that the crimes to which Movant pled guilty were nonviolent crimes, and the only prior conviction on Movant's record was the result of a court-martial proceeding in 1999 when Movant was in the Army; the equivalent of a misdemeanor for possession of a controlled substance. Counsel also noted that the sentencing assessment report for Movant indicated he was "a good risk to succeed on probation." The State argued conversely that the evidence showed "a large scale hydroponic grow operation" and recommended the maximum sentences of 15 years each for Counts I and II, and seven years for Count III. The State

5

also asked the court to order them to run consecutively, for a total sentence of 37 years.[10] The trial court ultimately did impose the maximum sentences, but ordered the two 15-year sentences to be served concurrently, and consecutive to the seven-year sentence, for a total of 22 years' imprisonment.[11]

Movant filed his Rule 24.035 Motion, raising several claims of ineffective assistance of counsel and containing additional factual allegations. Among them, Movant argued that his counsel was ineffective for (1) laboring under an actual conflict of interest by representing Movant and Natalie; (2) laboring under an additional conflict of interest due to Counsel's own political efforts toward the legalization of marijuana; (3) failing to inform Movant that by proceeding with the preliminary hearing, the State would revoke its plea offer; (4) allowing Movant to participate in the trial court's group plea procedure; and (5) failing to object when the trial court closed the courtroom to the public. The motion court—the same court that conducted the group plea at which Movant pled guilty—denied Movant's motion without an evidentiary hearing. This appeal follows.

### Standard of Review

Our review of a motion court's denial of a Rule 24.035 motion is limited to the determination of whether the findings and conclusions of the motion court were clearly erroneous. Rule 24.045(k). A movant is entitled to an evidentiary hearing on the claims in his motion where he or she alleges facts, not refuted by the record, that if true, would warrant relief; and the matters complained of resulted in prejudice. Recklein v. State, 813 S.W.2d 67, 70 (Mo. App. E.D. 1991). However, where the record allows this Court

---

[10] We note that the record does not show any new evidence that came to light in between when the State initially offered 120 days' shock time with probation and a 10-year backup, and when it argued for the maximum of 37 years.

[11] Natalie also received the maximum sentences on each count, to be served concurrently, for a total sentence of 15 years.

6

to determine the correctness of the motion court's actions, no remand for a hearing is necessary. See Luster v. State, 795 S.W.2d 109, 113 (Mo. App. S.D. 1990).

## Discussion

Movant alleged in his Rule 24.035 Motion that Counsel was ineffective because he labored under an actual conflict of interest by representing both Movant and Natalie, and because he allowed Movant to participate in a group plea with Natalie and five other defendants. We agree, and would go even further. We conclude the record demonstrates that, in light of the circumstances clear from the record, the trial court's group-guilty-plea procedure here rendered Movant's plea involuntary.[12]

First, regarding the conflict of interest, "[w]here a defendant is offered a plea, he is entitled to effective assistance of counsel in determining whether to accept that plea." Smith v. State, 443 S.W.3d 730, 734 (Mo. App. S.D. 2014) (citing Lafler v. Cooper, --- U.S. ---, 132 S.Ct. 1376, 1387 (2012)). This right includes the right to representation that is free of any conflict of interest. See Holloway v. Arkansas, 435 U.S. 475, 481 (1978) (citing Glasser v. United States, 315 U.S. 60, 62 (1942)). In order to establish Counsel labored under a conflict of interest, Movant had to "show that something was done by [C]ounsel in trial, or something was foregone by [C]ounsel and lost to [M]ovant, which was detrimental to [M]ovant's interests and advantageous to a person whose interests conflict with [M]ovant's." Yoakum v. State, 849 S.W.2d 685, 689 (Mo. App. W.D. 1993). Upon such showing, prejudice is presumed. Cuyler, 446 U.S. at 349-50 ("a

---

[12] Regarding the additional claims in Movant's motion listed above, they would have entitled Movant to an evidentiary hearing. However, because the record is clear that the group-plea procedure rendered Movant's plea involuntary, an evidentiary hearing is unnecessary, and we do not discuss Movant's other claims in detail.

7

defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief").

The motion court determined that Movant failed to adequately allege an actual conflict of interest because Movant failed to demonstrate what he lost by continuing to be represented by Counsel. This conclusion is clearly erroneous. Movant alleged that he lost the opportunity to plead guilty at an earlier stage under more favorable terms because Counsel made a choice to proceed with the preliminary hearing, which was in Natalie's best interest. This was sufficient and is supported by the record.

Counsel's communication regarding Movant's and Natalie's cases made clear that Counsel did not believe Movant and Natalie were equally culpable. In a letter to the prosecutor, Counsel stated the following:

> Regarding Natalie's charges, it simply seems obvious that there is no evidence of her involvement with any felonious activity. I do not deny that she may very well have been aware of the fact that [Movant] was growing marijuana plants in the closet of his bedroom, but I have not seen any evidence whatsoever to indicate that she participated in that activity.[13]

Given this, it was in Natalie's best interest not to plead guilty, while it was in Movant's best interest to accept the best plea offer he could get. Thus, their interests were at odds and Counsel should have withdrawn. See Davis v. State, 461 So.2d 291, 294 (Fla. App. 1985) (where attorney represented both driver and passenger of car where police found drugs, applying Cuyler, 446 U.S. at 349, court found "little doubt that . . . defense counsel encountered a serious conflict of interest"); cf. Holloway, 435 U.S. at 490 (conflict of interest "may well have precluded defense counsel . . . from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution"). Because

---

[13] Counsel wrote this letter well after the preliminary hearing, and just three months before Movant and Natalie pled guilty on August 16, 2013.

8

Counsel chose to continue joint representation and to conduct a preliminary hearing, serving Natalie's interest, we presume prejudice. Cuyler, 446 U.S. at 349-50.

Even if we did not presume prejudice, proceeding to the preliminary hearing caused the State to withdraw its plea offer to Movant. Besides alleging that Counsel failed to inform Movant this would happen, Movant alleged that had Counsel advised him to take the State's initial plea offer, he would have followed that advice and at worst would be serving a 10-year sentence now instead of a 22-year sentence. At best, he would still be on probation. "[A] significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). The sentencing disparity here supports Movant's allegation that his lawyer was conflicted and failed to fulfill his primary duty to advocate for Movant.

While the conflict of interest may well have simply entitled Movant to a hearing on his claim rather than outright reversal, we find that the group-plea procedure here only compounded this problem, rendering Movant's plea involuntary. Because Counsel continued jointly representing Movant and Natalie, including at the group plea, it became a problem that the trial court should have addressed. Movant alleged in his motion that Counsel should have objected to the group-plea procedure, but the record shows that the trial court's actions here were improper in their own right.

In analyzing the claim in Movant's motion regarding the group plea, the motion court, which had also accepted Movant's plea, focused on whether Movant alleged he was confused, drawing upon language from the Missouri Supreme Court stating that a particular danger present in group plea proceedings is that there are "increase[d]

9

opportunities for mistakes or confusion." Roberts v. State, 276 S.W.3d 833, 836 n.5 (Mo. banc 2009). The motion court determined that because Movant failed to allege he was confused or that he simply parroted the answers of other defendants,[14] he cannot argue the group plea proceeding rendered his plea involuntary. This conclusion is clearly erroneous. Confusion and answer-parroting were not the only, nor the most troubling, dangers present during Movant's group plea.[15]

Where a trial court knows or reasonably should know that a conflict of interest exists, it has a "duty to inquire into the propriety of a multiple representation." Mickens v. Taylor, 535 U.S. 162, 168 (2002) (discussing Cuyler v. Sullivan, 446 U.S. 335 (1980)). Further, "[t]he court's institutional interest in protecting the truth-seeking function of the proceedings over which it presides requires the court to consider whether the defendant has effective assistance of counsel, regardless of any purported waiver." State ex rel. Horn v. Ray, 325 S.W.3d 500, 510-11 (Mo. App. E.D. 2010). "Unregulated multiple representation may jeopardize not only the defendant's interest but the institutional interest in rendering just verdicts." Id. at 511.

Here, having heard arguments on a motion to suppress, which was still not ruled on by the time of the guilty plea, it is unlikely the trial court was unaware that police

---

[14] This danger of "parroting" others' is a reference to Judge Richter's concurrence in Wright v. State, 411 S.W.3d 381, 388 (Mo. App. E.D. 2013), denouncing this current circuit judge's use of group pleas.

[15] Additionally, the transcript filed with this Court was redacted so as to include only Movant's and Natalie's responses to each of the judge's questions, even though the judge had made clear that after each question, he would go down the line and each of the seven defendants would respond. It is unclear whether this was done at Movant's request or by the court's order. Either way, this redaction is improper as it blurs the complete picture of what actually occurred during this group plea; for instance, whether any other defendants asked questions or expressed concern, or other indicators that the procedure as a whole was confusing. Rule 81.15(b) provides that the transcript "shall be certified by the court reporter as a true and accurate reproduction of the proceedings transcribed." Mo. R. Civ. P. (2015). Especially here, where the procedure itself is challenged, the appellate court's review is only enabled by a full record of the proceeding, and if the court of appeals determines redaction is necessary, it can order a redacted transcript itself.

10

found almost all of the evidence underlying these charges in Movant's bedroom.[16] While both Movant and Natalie had assented to their joint representation by Counsel, it was incumbent upon the trial court to recognize that the discrepancy in their levels of culpability made it impossible for Counsel to effectively represent both of them. Though Natalie was willing to plead guilty at that point, had she chosen not to plead guilty and instead blamed Movant and desired to testify against him, Counsel would have been forced to withdraw, which the trial court should have recognized. See id. at 510 (upholding trial court's disqualification of attorney from representation of both defendant and victim, noting that should victim choose to testify against defendant, counsel would have to withdraw). Instead, the trial court continued down the line of seven defendants with questions, with no attempt to discern the presence of an actual conflict in the face of such obvious potential for one.

Moreover, the troubling fact that the State's promises to Natalie were contingent on Movant's own blind plea of guilty should have acted as an immediate red flag to the trial court. See State ex rel. White v. Gray, 203 N.W.2d 638, 644 (Wis. 1973) ("the voluntariness of a plea bargain which contemplates special concessions to another— especially a sibling or a loved one—bears particular scrutiny by a trial or reviewing court conscious of the psychological pressures upon an accused such a situation creates"). The fact that Movant and Natalie entered such an agreement being represented by the same attorney should have prompted the trial court to intervene.[17]

---

[16] Again, Natalie's motion for post-conviction relief acknowledges that the police found packaged marijuana in a common area of the house, but all other evidence was in Movant's personal areas of the home. ED103349. The trial court would have been aware of the actual evidence, and in either case, Counsel acknowledged that Movant was the more culpable party.

[17] The State also acknowledged during oral argument that the fact that the State's agreement was contingent upon Movant and Natalie both pleading guilty "potentially enhanced th[e] potential for a conflict."

11

Apart from this failure to protect the defendants' interests, the trial court also showed no commitment to protecting the institutional interest in the administration of justice, but rather held paramount its personal interest in saving time. "[C]ourts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Horn, 325 S.W.3d at 511 (quoting Wheat v. United States, 486 U.S. 153, 160 (1988)). The appearance of fairness is woefully absent from this proceeding, and the trial court's commitment to saving time simply did not justify the group plea here.

In this light, it takes little effort to fathom the pressure Movant claims he felt in this setting. Movant here found himself in a situation where his only hope was in his attorney and in the judge, both of whom had other priorities. As the judge stated, he wanted to save time, and he would eventually be sentencing Movant. Movant's attorney, rather than focusing solely on zealous advocacy of Movant's rights, had the same obligation to Movant's sister, as well as a desire that the judge would be lenient.[18] Movant's sister was right there also. Any defendant in Movant's stead would likely have been loath to raise a complaint standing right next to his sister, knowing any objection may adversely affect her. Five other defendants and their lawyers were there and most likely wanted a lenient and placated judge as well. The scene itself smacks of intimidation. Regardless of what Movant actually said on the record about his agreement to this scenario, as a system whose foundational concern is the protection of individuals from unjust treatment, there must come a point where we look at a situation with so many

---

[18] Moreover, where a judge engages in group pleas as standard practice, an objection to such practice by an individual lawyer could potentially adversely affect that lawyer's future practice in front of this judge.

12

elements "potentially" harmful to this justice and say, enough.[19]  There is no way to salvage any appearance of voluntariness in this setting.

Thus, the motion court clearly erred in denying Movant's Rule 24.035 Motion. Under the circumstances, we conclude no evidentiary hearing is necessary, as it is clear from the record Movant's plea was involuntary.  See Luster, 795 S.W.2d at 113.

## Conclusion

While there is little question that Movant is in fact guilty, the judicial process which metes out punishment must also be fair and constitutional.  Here, the trial court's failure to recognize the actual conflict of interest in Counsel's representation of Movant and Natalie, and the court's choice to continue the group plea despite awareness of the contingent plea agreement with the State, contributed to the injustice here and rendered Movant's plea involuntary.

Thus, we remand to the motion court with instructions to vacate Movant's guilty plea.  We also note the United States Supreme Court's conclusion that where ineffective assistance of counsel caused a defendant to reject a plea offer, "[t]he correct remedy . . . is to order the State to reoffer the plea agreement." Lafler, 132 S. Ct. at 1391.  Given all of the circumstances present here, Movant should have an opportunity to consider

---

[19] This is not to mention Movant's allegation that the judge also closed the courtroom to all parties but the defendants and their lawyers.  Because we reverse outright on other grounds, we note here only that closing the courtroom would have further added to intimidation of Movant, and if the trial court did in fact close the courtroom without cause, Movant's right to public trial was violated.  See Waller v. Georgia, 467 U.S. 39, 48 (1984) (numerating four criteria that must be met before court excludes public from any stage of criminal trial).  The motion court's conclusion that the right to a public trial does not extend to a guilty plea is not supported by case law.  See, e.g., United States v. Cockerham, 396 Fed. Appx. 66, 67 (5th Cir. 2010) (assuming right attaches to guilty plea but finding defendant waived it).  Additionally, the motion court's conclusion that Rule 24.02(d) would have entitled it to close the courtroom is a misinterpretation of the rule, which applies by its plain language only to the disclosure of a plea agreement and does not create a means by which a court can circumvent a defendant's constitutional rights by unilaterally closing the courtroom during a defendant's plea of guilty.

whether to accept the State's initial offer with the advice of competent and non-conflicted

counsel.

_____
Gary M. Gaertner, Jr., Judge

Philip M. Hess, P.J., concurs.
Angela T. Quigless, J., concurs.